UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **UNITED STATES** | **CIVIL ACTION** |
| **VERSUS** | **NO. 99-3489** |
| **WILLOWRIDGE ESTATES, et. al.** | **SECTION: "G" (1)** |

### ORDER AND REASONS

Before the Court is Intervenors St. Charles Parish and Lafourche Basin Levee District's (collectively, "Intervenors") Rule 60(b) Motion to Modify Consent Decree,[1] wherein Intervenors seek to modify a consent decree entered to resolve litigation between the United States, the plaintiff, and the defendants, Willowridge Estates, LLC and Rathborne Land Co., Inc. (collectively, "Defendants"). Having considered the motion, the memorandum in support, the United States' response in support of the motion, the opposition, the United States' reply, the parties' arguments at a hearing conducted on this motion, the consent decree, and the applicable law, the Court will grant the motion.

### I. Background

Defendants owned land that was subdivided into lots and developed into a residential area in St. Charles Parish (the Willowridge Estates subdivision).[2] Defendants owned another tract of land to the south of Willowridge Estates, which is part of federally protected wetlands (hereinafter, the "protected tract").[3] According to the United States, Rathborne Land Co., Inc.

---

[1] Rec. Doc. 47.

[2] Rec. Doc. 47-1 at p. 2.

[3] *Id.*

("Rathborne") placed a short dirt levee on the protected tract without a permit. However the United States Army Corps of Engineers (the "Corps") issued an after-the-fact permit under Section 404 of the Clean Water Act ("CWA"), 33 U.S.C. § 1251 *et seq.* On November 17, 1999, the United States filed suit against Defendants under the CWA for violating the terms of the permit by trying to convert the protected tract from its natural state into a residential area.[4]

On February 11, 2000, the parties reached a settlement and the court entered a consent decree containing the following terms: (1) requiring Willowridge Estates, LLC ("Willowridge") to pay a $400,000 civil penalty to the United States; (2) requiring Defendants to preserve the protected tract in its natural state;[5] (3) creating a conservation servitude owned by St. Charles Parish to further enforce the preservation of the protected tract (hereinafter, the "Preservation Area"); and (4) providing that the court retain jurisdiction to enforce or modify its terms. In addition, the consent decree contained a provision stating:

> Nothing in this Consent Decree shall limit the ability of the United States Army Corps of Engineers to issue, modify, suspend, revoke or deny any individual permit or any nationwide or regional general permit, nor shall this Consent Decree limit the EPA's or the Corps' ability to exercise its authority pursuant to Section 404(c) of the CWA, 33 U.S.C. § 1344(c).[6]

Further, the consent decree requires Defendants to pay a stipulated penalty to the United States in the event that Defendants fail to timely fulfill any requirements set forth in the consent decree.[7]

---

[4] *Id.* at pp. 2-3.

[5] Consent Decree, Rec. Doc. 5 ¶ 18 ("Defendants shall not take any action inconsistent with the preservation of the area covered by the conservation servitude identified in Appendix A (the "Preservation Area") in perpetuity in its natural condition, and shall not mow, cut, clear, cultivate, dredge, excavate, farm, fill, dewater, drain or otherwise disturb the Preservation Area in any manner whatsoever .").

[6] *Id.* ¶ 9.

[7] *Id.* ¶ 32.

On August 4, 2009, the St. Charles Parish Council approved a Cooperative Endeavor Agreement between St. Charles Parish ("St. Charles") and Lafourche Basin Levee District ("Lafourche"), which allocated responsibilities between St. Charles and Lafourche for the construction of a flood control project on the west bank of the Mississippi River in St. Charles Parish.[8]  On May 11, 2011, the Corps issued a permit under Section 404 of the CWA to St. Charles for the construction of a levee to protect the Willowridge subdivision.  On April 2, 2012, Lafourche obtained an Order of Expropriation on approximately 9.3 acres of land falling within the 375-acre Preservation Area.

On August 14, 2012, having obtained the Section 404 permit and the Order of Expropriation necessary to construct the levee, St. Charles and Lafourche intervened in this case. After the parties failed to agree on a modification to the terms of the consent decree, Intervenors filed the instant Rule 60(b) Motion to Modify Consent Decree to remove preservation restrictions from approximately 9.3 acres in the Preservation Area to allow construction of the levee.[9]  The United States filed a response in support of the motion on March 4, 2013.[10] Defendants opposed the motion on March 5, 2013,[11] and the United States filed a reply, with leave of Court.[12]  The Court conducted a hearing on the motion on June 19, 2013.  At the hearing, Intervenors called the following witnesses to testify: (1) Sammie Charles Scholle, Director of Public Works & Wastewater of St. Charles Parish; (2) V.J. St. Pierre, Parish President of St. Charles Parish; and (3) Randy Trosclair, Executive Director of Lafourche Basin

---

[8] Rec. Doc. 47-1 at p. 5.

[9] Rec. Doc. 47.

[10] Rec. Doc. 50.

[11] Rec. Doc. 51.

[12] Rec. Doc. 61.

Levee District. Defendants offered the testimony of Danny Joseph Hebert, Certified Civil Engineer and the former Director of Public Works for St. Charles Parish and Gregory C. Lier, Executive Vice President of Rathborne Land Co., Inc.

## II. Parties' Arguments

### A. *Existence of a Significant Change in Factual Circumstances Warranting Modification of the Consent Decree*

In support of the motion to modify the consent decree, Intervenors contend that a number of significant factual changes have occurred since the entry of the consent decree that warrant the proposed modification to permit the construction of a levee along the "northern alignment" of the Preservation Area. According to Intervenors, the damage caused by Hurricanes Katrina and Rita and the development of the southernmost subdivisions in St. Charles Parish "spur[red] St. Charles Parish to finalize its decision to complete its flood protection system and join its levee system with pre-existing eastern and western levees."[13] Specifically, Intervenors state that after the consent decree was entered "St. Charles Parish entered into the Cooperative Endeavor Agreement with Lafourche Basin in 2009, St. Charles Parish applied for a Section 404 permit in 2009, the Corps granted the permit in 2011, and Lafourche Basin expropriated the necessary land in 2012."[14] Further, Intervenors argue that "absent modification of the decree, continued enforcement of its terms would be detrimental to the public by depriving the residents of St. Charles Parish of the flood protection they so desperately need."[15] Intervenors note that the completion of the eastern and western levees creates a funnel effect, which makes the

---

[13] Rec. Doc. 47-1 at p. 9.

[14] *Id.* at 10.

[15] *Id.*

4

southernmost subdivisions in St. Charles Parish particularly vulnerable to flooding if a levee is not constructed.[16]

In opposition to the instant motion and at oral argument, Defendants argued that Intervenors have not carried their initial burden to establish a significant change in factual circumstances to warrant a modification of the consent decree, because "the seminal event, the decision to construct the levee, occurred prior to the issuance of the Consent Decree and the location of that levee was considered by the parties to the Consent Decree in the negotiations of its terms."[17] In support of their position, Defendants rely on the affidavit and testimony of Greg Lier, Executive Vice President of Rathborne and Willowridge. Mr. Lier asserts that he was personally involved in the negotiation of the consent decree and that he was "involved in the levee alignment selection process for the Westbank Hurricane Protection Levee (hereinafter "WBHPL") for the Westbank of St. Charles Parish from its inception in the early 1990's," which was well underway at the time the consent decree was negotiated.[18]

According to Defendants, at the time negotiations were underway for the consent decree, "it was well understood by the Corps, the EPA and the Justice Department that there were two basic alignments under consideration": the "northern alignment" and the "southern alignment."[19] Defendants claim that they successfully negotiated to exclude the right of way for the "southern alignment" from the conservation servitude, and although the United States initially requested that the right of way for the "northern alignment" also be excluded from the conservation servitude, it abandoned its request on the basis of Defendants' objection that such exclusion

---

[16] *Id.* at p. 5.

[17] Rec. Doc. 51 at p. 3.

[18] *Id.*

[19] *Id.*

would constitute a taking of Defendants' property.[20] Defendants assert that "[t]he fact that the Northern Alignment was ultimately chosen is certainly not a change of circumstance," because both alignments were well known prior to issuance of the consent decree and St. Charles had, in fact, applied for permits on both alignments at various times prior to entry of the consent decree.[21] Defendants contend that the only event that occurred after the consent decree which allowed the project to go forward was a "unilateral decision by the Corps." Therefore, Defendants argue that Intervenors should not be allowed to "undo the considered negotiations of the original parties with respect to the consent decree," by claiming that decisions made on issues pending before the consent decree was entered constitute a significant change in circumstances.[22]

### B. *Suitability of the Proposed Amendment to the Consent Decree*

Intervenors argue that the proposed amendment is suitably tailored to "accomplish[] the goal of providing public flood protection to the residents of the parish while minimizing the environmental impact the flood control structures will cause."[23] Intervenors explain that as part of the review process conducted before the Corps entered the Section 404 permit, the Corps conducted an exhaustive environmental review process, which concluded that the northern alignment for the levee was appropriate.[24] The United States' response in support of the motion to modify the consent decree explains that the Section 404 permit issued by the Corps reached the following conclusions:

---

[20] *Id.*

[21] *Id.* at p. 5.

[22] *Id.*

[23] Rec. Doc. 47-1 at p. 10.

[24] *Id.* at p. 6.

- The proposed levee will provide hurricane and tidal surge flood protection for the Willowridge subdivision.
- In order to provide flood protection, the levee must be located between the Willowridge subdivision and tidal waters to the south. The selected levee alignment is the least environmentally damaging location that will achieve that purpose.
- Compensatory mitigation required by the Permit "adequately replaces the functions and values of the wetlands that would be lost as a result of the project," and "is commensurate in degree and scope to the proposed wetland impacts."[25]

Additionally, the United States notes that Intervenors propose to modify the consent decree to remove preservation restrictions from the 9.3 acres of land expropriated to allow construction of the levee, but to keep all other provisions of the decree the same for all other land within the conservation servitude.[26] The United States explains that "at one point, the United States had considered more detailed amendments to the Decree, [but] the United States has reviewed the proposed amendments and concluded that they are acceptable as submitted," and need not be submitted for public comment.[27]

Defendants oppose Intervenors' proposed modification and argue that if the Court finds modification of the consent decree is warranted, the Court should cancel the entire consent decree. According to Defendants, the construction of a levee along the "northern alignment" within the conservation servitude will destroy wetlands in the surrounding area. In particular, Defendants are concerned about the impact of the construction of a pumping station, which will change the drainage patterns for the balance of the conservation servitude.[28] Defendants contend that when the consent decree was entered, Defendants were able to protect the wetlands and

---

[25] Rec. Doc. 50 at p. 3.

[26] *Id.* at p. 4.

[27] *Id.* at p. 4 & n. 3.

[28] Rec. Doc. 51 at p. 5.

7

fulfill their obligations under the terms of the consent decree, because governmental entities were not taking any actions within the conservation servitude which would threaten the preservation of the land. Defendants' obligations under the consent decree make no exception for transfer of land involuntarily by expropriation, and so Defendants argue that the modification proposed by Intervenors exposes Defendants to liability for stipulated penalties under the terms of the consent decree based on actions taken by Intervenors outside of Defendants' control.[29]

Further, Defendants argue that the necessary modifications required to protect Defendants from liability for governmental action over which Defendants have no control would essentially remove all of Defendants obligations under the consent decree. Therefore, Defendants contend that the Court should simply cancel the consent decree if any modification is deemed necessary.[30]

In response to Defendants' request to vacate the consent decree, the United States argues that Defendants have failed to present any justification for cancellation of the consent decree. First, the United States contends that Defendants' request is procedurally improper, because Defendants have not filed a Rule 60(b) motion seeking relief from the decree. Second, the United States argues that even if Defendants' request is considered on the merits, Defendants have not met their burden to establish a significant change in circumstances or that cancellation of the consent decree is suitably tailored to those changed circumstances.[31]

In addition, the United States claims that Defendants' assertion that they will be held liable for violating the decree based on Intervenors' conduct in constructing the levee "is sheer

---

[29] *Id.* at pp. 5-6.

[30] *Id.* at p. 6.

[31] Rec. Doc. 61 at pp. 2-3.

speculation."[32] The United States explains that it "cannot pre-judge the circumstances under which it might seek to enforce the Decree in the future, [but] it is difficult to imagine *any* circumstance under which Willowridge would be viewed as having 'take[n] an action' inconsistent with the preservation of land when it was not Willowridge, but the Intervenors, that had acted."[33] The United States also contends that Defendants do not "even attempt to explain why the purported risks to Willowridge can only be addressed by vacating the Decree."[34] In fact, at oral argument, the United States stated that it would not oppose the addition of language in any modification of the consent decree providing that Defendants will not be held responsible for the actions taken by the governmental entities involved in the levee construction project.

### III.  Applicable Law

All parties agree on the applicable law as articulated by the United States Supreme Court in *Rufo v. Inmates of Suffolk County Jail*,[35] and as recently applied by the United States Court of Appeals for the Fifth Circuit in *League of United Latin American Citizens, Dist. 19 v. City of Boerne*.[36]

A consent decree adopted by the court matures into a federal judgment,[37] which the district courts retain the "inherent equitable power to modify."[38] The Fifth Circuit elaborated

---

[32] *Id.* at p. 3.

[33] *Id.* at p. 4.

[34] *Id.*

[35] 502 U.S. 367 (1992).

[36] 659 F.3d 421 (2011).

[37] *Rufo*, 502 U.S. at 378 ("A consent decree . . . is an agreement that the parties desire and expect will be reflected in, and be enforceable as, a judicial decree that is subject to the rules generally applicable to other judgments and decrees.")

[38] *Boerne*, 659 F.3d at 435.

that "[t]he source of the power to modify [an existing consent decree] is of course the fact that an injunction often requires continuing supervision by the issuing court and always a continuing willingness to apply its powers and processes on behalf of the party who obtained that equitable relief."[39]

In *Boerne*, the Fifth Circuit stated that "[c]onsent decrees are subject to Federal Rule of Civil Procedure 60(b)."[40] Thus, "[a] district court may modify an injunction if 'applying it prospectively is no longer equitable'" under Rule 60(b)(5), and may also consider "any other reason that justifies relief" under Rule 60(b)(6).[41] Although "[d]istrict courts must take a flexible approach to motions to modify consent decrees,"[42] modifications are not warranted in all circumstances.[43] Therefore, "[t]he burden is on the moving party to prove that modification is warranted, regardless of whether the party seeks to lessen its own responsibilities under the decree, impose a new and more effective remedy, or vacate the order entirely."[44] "[A] district court's decision to grant or deny relief under Rule 60(b) [will be reviewed] for abuse of discretion."[45]

In *Boerne*, the Fifth Circuit stated, regarding the Supreme Court's analysis in *Rufo*, that:

*Rufo* established a 2–step test for determining whether modification is warranted. First, the party seeking modification must show that "a significant change either in factual conditions or in law" that "make[s] compliance with the decree substantially more onerous [or] . . . unworkable because of unforeseen obstacles[,]

---

[39] *Id.* at 436.

[40] *Id.* at 437 (citing *Rufo*, 502 U.S. at 378).

[41] *Id.*; *see also Rufo*, 502 U.S. at 378.

[42] *Boerne*, 659 F.3d at 437.

[43] *Rufo*, 502 U.S. at 383.

[44] *Boerne*, 659 F.3d at 438 (citing *Rufo*, 502 U.S. at 384).

[45] *Id.* at 437 (citing *Frazar v. Ladd*, 457 F.3d 432, 435 (5th Cir.2006).

. . . or when enforcement of the decree without modification would be detrimental to the public interest." Second, the court must then "consider whether the proposed modification is suitably tailored to the changed circumstance."[46]

The Fifth Circuit further stated that "[t]o meet the first part of the test, the party seeking modification must show that the change in circumstance is 'significant,' and not merely that 'it is no longer convenient to live with [the decree's] terms.'"[47] A party may meet its initial burden by showing a significant change "either in factual conditions or in law."[48] A significant change warranting modification of a consent decree may be found if the moving party demonstrates that: (1) the initial consent decree was not achieving its intended purpose;[49] (2) changed factual conditions make compliance with the decree substantially more onerous; (3) the decree proves to be unworkable because of unforeseen obstacles; or (4) enforcement of the decree without modification would be detrimental to the public interest.[50] "Ordinarily, however, modification should not be granted where a party relies upon events that actually were anticipated at the time it entered into decree."[51] The Supreme Court, in *Rufo*, elaborated:

> If it is clear that a party anticipated changing conditions that would make performance of the decree more onerous but nevertheless agreed to the decree, that party would have to satisfy a heavy burden to convince a court that it agreed to the decree in good faith, made a reasonable effort to comply with the decree, and should be relieved of the undertaking under Rule 60(b).[52]

---

[46] *Id.* (citing *Rufo*, 502 U.S. 383-84).

[47] *Id.* (citing *Rufo*, 502 U.S. at 383-84).

[48] *Rufo*, 502 U.S. at 384.

[49] *Boerne*, 659 F.3d at 438.

[50] *Rufo*, 502 U.S. at 384.

[51] *Id.* at 385 (citing *Twelve John Does v. Dist. of Columbia*, 861 F.2d 295, 298-299 (D.C. Cir. 1988); *Ruiz v. Lynaugh*, 811 F.2d 856, 862-863 (5th Cir. 1987)).

[52] *Id.*

Once the moving party meets its burden to establish that a change in fact or law warrants modification of a consent decree, the second step of the analysis set forth in *Rufo* requires "the district court [to] determine whether the proposed modification is suitably tailored to the changed circumstance."[53] Regarding the suitability of the proposed modification, the Supreme Court indicated that "three matters should be clear."[54] First, "a modification must not create or perpetuate a constitutional violation." Second, district courts should focus "on whether the proposed modification is tailored to resolve the problems created by the change in circumstance," and "[a] court should do no more, for a consent decree is a final judgment that may be reopened only to the extent equity requires."[55] Third and finally, within the first and second constraints noted above, "the public interest and '[c]onsiderations based on the allocation of powers within our federal system,' require[s] that the district court defer to local government administrators, who have the 'primary responsibility for elucidating, assessing, and solving' the problems of institutional reform, to resolve the intricacies of implementing a decree modification."[56]

## IV. Analysis

As an initial matter, the Court finds that modification of the consent decree may not even be necessary under its current terms. The consent decree expressly provides that "[n]othing in [the] Consent Decree shall limit the ability of the [Corps] to issue, modify, suspend, revoke or

---

[53] *Id.* at 391.

[54] *Id.*

[55] *Id.*

[56] *Id.* at 392 (quoting *Bd. of Educ. of Oklahoma City Pub. Sch. v. Dowell*, 498 U.S. 237, 248 (1991); *Brown v. Bd. of Educ.*, 349 U.S. 294, 299 (1955)).

deny any . . . permit, nor shall [the] Consent Decree limit the EPA's or the Corps' ability to exercise its authority pursuant to Section 404(c) of the CWA."[57] Thus, the United States and Defendants were aware, and indeed incorporated into the consent decree, that the entry of the consent decree would not limit the Corps or the EPA in their decisions regarding the appropriate site for levee construction. Here, Intervenors initiated the action ultimately taken by those agencies. Nevertheless, all parties agree that if a levee is constructed, the consent decree should be modified to give Defendants a measure of assurance that actions taken by St. Charles or other governmental entities (even if permitted and/or sanctioned by the Corps or EPA) will not result in liability to Defendants under the terms of the consent decree for actions outside of Defendants' control. Therefore, the Court must first determine whether a significant change in factual conditions has occurred that warrants modification of the consent decree. And if such modification is warranted, the Court must determine whether Intervenors' proposed modification is suitably tailored to the changed circumstances.

### A. *Existence of a Significant Change in Factual Circumstances Warranting Modification of the Consent Decree*

In *Rufo*, the Supreme Court stated that a party may meet this initial burden by demonstrating that changed factual conditions make compliance with the decree substantially more onerous or the enforcement of the decree without modification would be detrimental to the public interest.[58] The parties all agree that the necessity of constructing a levee was considered by Intervenors prior to entry of the consent decree, and even that the United States and

---

[57] Rec. Doc. 5 ¶ 9.

[58] *See Rufo*, 502 U.S. at 385.

Defendants—the parties to the consent decree—were aware of those considerations and the various alignments under consideration for the levee prior to entering the consent decree. However, after the consent decree was entered, a number of critical events transpired.

First, Intervenors entered a Cooperative Endeavor Agreement to build a levee, and the money for the project was secured. Second, St. Charles obtained a Section 404 permit from the Corps to construct the levee along the "northern alignment." The Corps, prior to issuing the permit, conducted an exhaustive environmental review, and concluded that the "northern alignment" was appropriate and the least environmentally damaging. Thus, refusing to modify the consent decree would leave St. Charles Parish without needed levee protection, because after years of trying to get a levee system in place, this is the first and only option to be approved by the appropriate authorities. Despite Defendants' assertion that the Corps' decision, which Defendants term "unilateral,"[59] cannot provide the basis for the proposed modification, the express terms of the consent decree are to the contrary. As noted above, the consent decree explicitly provides that it does not limit the Corps' or the EPA's authority to issue permits or exercise their authority under Section 404(c) of the CWA. Third, Lafourche obtained an Order of Expropriation from a state court along the "northern alignment." Finally, and perhaps most critically, Hurricanes Katrina and Rita devastated the area, and the subsequent development of the southernmost subdivisions in St. Charles Parish made the construction of the levee to protect parish residents even more pressing.

These events satisfy Intervenors' burden to demonstrate that changed factual conditions make compliance with the decree substantially more onerous. Further, the refusal to modify the

---

[59] Defendants admitted in oral argument that the Corps' decision is not a unilateral one. The Louisiana Department of Natural Resources must agree, and the Corps' decision was made only after public comment, at which Defendants had an opportunity to participate.

consent decree to permit construction of the levee would be detrimental to the public interest generally, and particularly the numerous residents of St. Charles Parish that are currently without hurricane levee protection.

### B. Whether the Proposed Modification to the Consent Decree is Suitably Tailored to Address the Changed Circumstances

Next, the Court must determine whether the proposed modification is suitably tailored to the changed circumstances. In making this determination, the Court is cognizant that the Supreme Court has instructed district courts to defer to local government administrators to revolve the intricacies of implementing a decree modification, provided that the modification does not create or perpetuate a constitutional violation and is tailored to resolve the problems created by the changed circumstances.[60]

Here, Intervenors have determined that construction of the levee is necessary and that the "northern alignment" is the least damaging to the wetlands environment and is the most economically viable. The United States has evaluated the proposed levee location and consent decree modification, and agrees with Intervenors' conclusions based on an exhaustive review process conducted by the Corps before a permit is issued. No party has suggested that the proposed modification to remove preservation restrictions from 9.3 acres along the "northern alignment" creates a constitutional violation or fails to address the changed circumstances requiring the modification. Thus, deference to the determinations made by the Intervenors as local government administrators regarding the appropriate location for the levee is warranted in this case.

---

[60] *Id.* at 391.

Defendants argue that the proposed amendment will expose Defendants to liability under the consent decree for actions taken by governmental entities outside of Defendants' control. They also stated in oral argument that they would not be opposed to construction of the levee if it were built along the "southern alignment," which has always been Defendants' preference. At oral argument, Intervenors stated that they have no reason to believe that the Corps would ever agree to construct the levee there.

Moreover, Defendants contend that the consent decree should be cancelled. However, cancellation of the entire consent decree goes beyond addressing the problems created by the changed circumstances. The Supreme Court has explicitly instructed that "courts should do no more" to modify a consent decree than is necessary to address the changed circumstances, because "a final judgment [] may be reopened only to the extent that equity requires."[61] Defendants have not carried their burden to demonstrate why complete cancellation of the consent decree is necessary to address the possibility that Defendants will be exposed to liability for Intervenors' actions.

The Court understands Defendants' concerns regarding exposure to liability for Intervenors' actions in constructing the levee; however, those concerns are speculative and can be addressed through a narrowly tailored modification to the consent decree and do not necessitate cancellation of the consent decree. Specifically, the modification to the consent decree may include language to the effect that Defendants will not be responsible for the environmental consequences of actions taken by governmental entities in constructing the levee.

---

[61] *Rufo*, 502 U.S. at 391.

Such language addresses Defendants' concerns, but avoids reopening a final judgment beyond that which "equity requires."[62]

### V. Conclusion

Considering the changed factual circumstances warranting modification of the consent decree and the fact that the proposed modification is suitably tailored to those changed circumstances,

**IT IS HEREBY ORDERED** that Intervenors' Rule 60(b) Motion to Modify Consent Decree[63] is **GRANTED**;

**IT IS FURTHER ORDERED** that Defendants' request to vacate the consent decree is **DENIED**;

**IT IS FURTHER ORDERED** that the parties shall submit to the Court, within 7 days of the entry of this order, proposed language to modify the consent decree to remove the preservation restrictions from the expropriated land and shield Defendants from liability for actions taken by governmental entities involved in construction of the levee.

**NEW ORLEANS, LOUISIANA**, this 9th day of July, 2013.

**NANNETTE JOLIVETTE BROWN**
**UNITED STATES DISTRICT JUDGE**

---

[62] *Id.*

[63] Rec. Doc. 47.

17